PRESNALL v. ADAMS et al. (No. 6246.)

(Court of Civil Appeals of Texas. San Antonio. June 18, 1919. Rehearing Denied. July 7, 1919.)

1. VENUE ⬳7—PRIVILEGE—ACTIONS ON CONTRACT.

Where plaintiff sued architects who had designed his house and had contracted to supervise the building of the house, on the theory that the architects were negligent in superintending construction, or in drawing plans, and that such negligence resulted in unsafe construction which caused the house to be destroyed by fire, held, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 5, that suit might be maintained in the county where the house was located, though it was other than the county of defendants' residence.

2. CONTRACTS ⬳196 — ARCHITECTS—LIABILITY.

Where an architect contracts to draw plans and specifications for a building, and also agrees to superintend the same, he is liable for failure to use skill and ability in the preparation of the plans, and is also liable if he fails to use reasonable care in inspecting the premises.

Appeal from District Court, Jim Wells County; V. W. Taylor, Judge.

Action by P. A. Presnall against Carl C. Adams and another. From a judgment sustaining defendant's plea of privilege, plaintiff appeals. Reversed and remanded.

W. R. Perkins, of Alice, and J. D. Dodson, of San Antonio, for appellant.
Arnold & Cozby, of San Antonio, for appellee.

COBBS, J. Appellant filed this suit in the district court of Jim Wells county on the 3d day of December, 1918, to recover of appellees damages in the alleged sum of $14,-927.56. The suit is based upon a written instrument, hereinafter set out.

Appellee filed his plea of privilege demanding "that this case be either dismissed, or else transferred to Bexar county at San Antonio," and the case came on for hearing on said plea, whereupon appellant filed his first amended original petition, alleging and saying:

"In response to the plea of defendant heretofore filed in this cause, wherein the defendant prays that before the court passes on his plea of privilege filed in this cause and on the controverting affidavit to said plea of privilege filed by plaintiff be required to replead and elect as to which of the two causes of action pleaded in his original petition he will rely upon in response to said plea, and with leave of court first had plaintiff files this, his first amended original petition, repleading," etc.

Alleging appellee held himself out as an expert architect, appellant engaged his firm to make plans and specifications for a residence for appellant to live in, and alleged further that on account of defective construction the building caught on fire and was totally destroyed, together with its entire contents.

He prayed judgment for $16,927.56, with interest from February 2, 1918, and costs.

The written obligation is as follows:

"Carl C. Adams      Carlton W. Adams.
"Adams & Adams,
"Architects.
"516–518 Gibbs Building,
"San Antonio, Texas.
"Old Phone Crockett 423.
"August 15, 1914.
"Mr. P. A. Presnall, Alice, Texas—Dear Sir: We will superintend your building for eighteen (18.00) dollars per trip, or fourteen (14.00) dollars per trip if we are going either to Robstown or Alice at the same time.

"Or we will superintend for 1½% of the cost of the building plus traveling expenses, providing the building is completed in eight (8) months. You see as it is a day job you might

want to build slow, and be a year or more in building, which would require more trips.

"The bill for the trips already made is as follows:

First trip Kingsville to Alice.....................$10 00
Second trip Kingsville to Alice.................. 10 00
Third trip Kingsville to Alice.................... 10 00
And our Mr. Flannigan who is now visiting
  you ....................................... 10 10

Total ....................................$40 00

"I don't know what Mr. Flannigan's expenses will be, but he had to go to Alfred and I asked him to stop and see you.

"I also want to spend a day with you here in San Antonio going over the plans and shopping for tile fixtures, hardware and anything you may need. For this there will be no charge.

"Yours truly,      Adams & Adams,
"JAL                Per Carl C. Adams."

Appellee filed a controverting affidavit. Whereupon an answer was filed on January 11, 1919, prepared by appellee to the controverting affidavit of appellant. And on the same day appellant filed a response to plea of appellee asking an election, stating that—

"He elects to prosecute his cause of action for breach of duty arising out of the contract to prepare plans and specifications and superintend the building affording reasonable safe construction."

On January 18, 1919, the court sustained the plea of privilege and ordered cause transferred to the Seventy-Third district court, Bexar county, Tex., for trial.

At the request of appellant, the court made and filed findings of fact and conclusions of law sustaining the plea of privilege and transferred the cause to district court of Bexar county for trial on its merits.

Appellant's first and second assignments of error and all the propositions are to the effect the court erred in sustaining the plea of privilege because appellees proposed in writing to plaintiff as architects to superintend his building in Jim Wells county, which was accepted, and necessarily contemplated it was to be performed in Jim Wells county, and the law, in the absence of express agreements, enjoined reasonable skill and care in the performance, and there was sufficient written agreement, upon its breach, to maintain a suit in Jim Wells county.

It is not alleged, or shown, when the building was completed and when appellant occupied it as a residence. It is alleged that appellee made the proposition to superintend erection of the building on or about August 15, 1914, and it was destroyed by fire February 2, 1918.

In considering this case, in the light of the appellant's claim that the court erred in sustaining appellee's plea of privilege, it is well to again look at appellant's contention as reflected by the record made by him. He filed a pleading in which he says he "elects to prosecute his cause of action for breach of duty arising out of the contract to prepare plans and specifications, and superintend the building affording reasonably safe construction."

Such grounds for the purpose of securing jurisdiction are independent the one from the other, but here may be treated as contemporaneous agreements, though the latter agreement was made after the plans were drawn. If the damage to the building was caused by defective plans and specifications, it would not be pretended that there was any agreement to pay for damages to the building in Jim Wells county, if that stood alone and was all that was done. There was no such contract, express or implied. The mere fact that he knew that the plans were for a building to be erected there, would not authorize the bringing of a suit there to recover on his obligation to exercise proper skill in planning and writing specifications for the building. To take it out of the general rule would require a proper promise in writing to perform his obligation in the county where erected; but when the same architect entered into a written obligation to superintend the erection of the same building in Jim Wells county, and on account of improper plans, drawn and superintended by the same person, the construction was defective and by reason thereof it was destroyed by fire, there was a nonseverable breach of the obligations to plan with skill and to superintend with skill.

The letter referred to is a proposition to superintend the building "providing the building is completed in eight months" at a certain price "per trip from San Antonio." It is not an express agreement, agreeing to perform his obligation in Jim Wells county, and make necessary changes in the plans; but it could be performed at no other place. True, as a superintendent, he is to perform personal services there, from time to time, in making trips from San Antonio to superintend the building. It was not contemplated that he was to remain there all the time, be constantly on the job, and see every piece of timber or material that went in; but he was supposed to use such ordinary care, to discover and correct defective work, for he was to make trips there for that sole purpose, because otherwise he could not superintend it properly. After making the foregoing observation, was there such a contract made by appellee to superintend such building that made him liable and bound to pay damages, if any, by the fire caused by the defective plans or faulty construction which he followed as superintendent that caused the injury, or in which as the superintendent by the exercise of proper skill and ability he would have prevented? Germane to this discussion, the trial court found as a matter of law: The obligation and the breach, or breaches, "is one implied by law and is not contained in the written offer

made in the letter from defendants to plaintiff, which plaintiff adopts as the basis for his written contract, and that the defendants have not contracted in writing to perform the obligation, made the basis of plaintiff's suit, in Jim Wells county, Tex." In this we think he erred.

[1, 2] Article 1830, Vernon's Sayles' St., provides that no person shall be sued out of the county in which he has a domicile, except in certain cases provided for.

But appellant claims his right to sue appellees in Jim Wells county comes under the exception as contained in subdivision 5 of that article:

"Where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county, or where the defendant has his domicile."

This article has been many times interpreted in varying cases.

It is held in Lindheim v. Muschamp, 72 Tex. 33, 12 S. W. 125:

"A contract to build a house, and a bond conditioned that the contractor build the house as he contracts to do, are separate contracts, and a suit upon the latter must be brought in the county of the residence of one or more of the obligors."

In this case we are dealing with an architect who draws plans and specifications, who superintends the construction in contradistinction to the contractor, who builds and erects, but in either case skill and ability to perform the service is impliedly inferred, and we fail to see wherein the obligation is not upon the one as the other.

Held in Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399:

"Where a person buys corn from a broker in another county, an action on the contract can be brought in the county where the buyer lives; this being the county in which the contract is to be performed."

Held in Darragh v. O'Connor, 69 S. W. 646:

"The written contract need not expressly state that it is to be performed in a particular county to give jurisdiction; but, if it appears from the writing that it must necessarily be performed in a certain county, the venue is properly laid in that county."

Also, see Borden & Antill v. Le Tulle Mercantile Co., 32 Tex. Civ. App. 477, 74 S. W. 788.

Held in Callender, Holder & Co. v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366:

"Where one contracts to deliver in a certain county cotton at a certain grade, and at a fixed price, as evidenced by his drafts and bills of lading, his failure to deliver the cotton of the specified grade and quantity he can be sued in the county where the cotton was to be delivered, as that was where the contract was to be performed."

Held in Cecil v. Fox, 208 S. W. 955:

"A written contract may not plainly specify that it is to be performed in a certain place, yet if the contract, by its terms, leads to no other conclusion but that it is performable in that place, then jurisdiction will be given to that place"—citing in support Bell County v. Cox, 33 Tex. Civ. App. 292, 76 S. W. 607.

The authorities, as we gather from a careful reading, lead us to the conclusion that, where the same person is the architect and superintendent, he is liable in both capacities in damages for the lack of skill and care in the construction of the building. Schreiner v. Miller, 67 Iowa, 91, 24 N. W. 738, 56 Am. Rep. 339. They go further even than that, and hold a builder is bound to discover defects that are reasonably discoverable or patent, and where he knows, or has reason to believe, that the plans are defective, and follows such plans without pointing out the defects to the owner or architect, or has experts at his hands to inspect and pass on them, and has had large experience or holds himself out as competent, he is liable. 9 C. J. § 87, p. 753; Schreiner v. Miller, 67 Iowa, 91, 24 N. W. 738, 56 Am. Rep. 339; La. Molasses Co. v. Le Sassier, 52 La. Ann. 2070, 28 South. 220. Under the authorities, the appellee would be liable if sued in the county of his residence. Under the written obligation to perform this work in Jim Wells county, appellee says he is exempt from the obligation to perform with skill and ability, as an implied obligation, which is entirely different from the obligation to merely superintend. Appellees' contend that the obligation to perform the supervision with skill and ability is independent of the obligation to superintend, and, not being in writing, the suit on such obligation could not be brought in Jim Wells county. This is a very nice distinction appellee makes, presented and urged with marked ingenuity and ability; but he promised to superintend the construction of the building in Jim Wells county, and that carried with it the obligation in its broadest terms. As he was the architect in the first instance, then promising to superintend the construction of that building, it was part of his duty to see that it was properly constructed, and any defects in his planning it was his duty to correct, if such there were, in Jim Wells county while superintending the construction of the same.

The suit was based upon the letter of August 15 1914, in which he proposed "to superintend the building for $18 per trip or $14 per trip when he was going either to Robstown or Alice at same time," which proposal was accepted by appellant verbally.

A contract to draw plans and specifica-

tions by an architect, as hereinbefore stated, implies skill and ability in the preparation, and in this instance the house may have called for imperfect plans and specifications (a defect on the part of the architect in the first instance in making his plans); but when the same architect enters into a written agreement, immediately after plans are approved, to superintend the same building, it will all be treated as a contemporaneous agreement. At least if sued for breach of performance in part of the obligation to superintend for which the venue would be in Jim Wells county, being same person, why may he not be sued because of the defective construction of the imperfect plans, if any, and thus adjust all the matters of difference growing out of the same contract in the same suit? The superintendent knew he would be required to go to and be in Jim Wells county to deliver the plans, go over them with the owner, and be on the ground to see that the contractor properly interpreted them and built them all in accordance therewith. He was, as said in American Surety Co. v. S. A. L. & Trust Co., 98 S. W. 387, obligated to bring to the performance of his contract reasonable care and skill befitting his profession and knowledge of the business in hand. And the same duty was on him as superintendent of the building he had planned.

The proposition was in writing, it was accepted, and the obligation could be performed in no other place than Jim Wells county where the building was to be erected. We do not mean by that he could not be sued in Bexar county, the place of his residence, but mean he could be sued in either county.

We have read all the cases cited by both parties, and many others, and have made a very thorough investigation, and been greatly assisted by the admirable briefs of both parties; but we cannot escape from the proposition that our statute itself, and as construed by our courts, means when a party offers to perform an obligation in a particular place it means and compels "the duty to perform it, whatever may be its nature. It may be a moral obligation or legal obligation, or both; * * * that is the right to performance which the law confers on one party, and the corresponding duty of performance to which it binds the other." Larrabee v. Talbott, 5 Gill (Md.) 426, 440, 46 Am. Dec. 637; Story, Confl. Laws, § 226.

Appellant further contended by assignment that appellee waived his plea of privilege by urging to a controverting affidavit of plaintiff a plea containing sundry matters in reply thereto.

While we find such a pleading in the record, appellee contends he made such an oral suggestion to the court with the understanding he would not file it; but it was filed by appellant, and not by him. As the court made no finding on this issue, it will not be discussed.

Appellee contends that the written contract was abandoned, and a substitute verbal contract was made by changing the compensation or modifying as the court found by reducing trip to $10 instead of $18 to Alice from San Antonio, or $14 to Alice, when appellee was going to Robstown. We do not see how reducing the price from amount named in the written contract in any way novated it so that the other terms would be changed and nullified. He was still performing the services named in the identical same terms at a reduced price under the same written obligation. We must construe as one continuous and contemporaneous and inseparable transaction the furnishing of plans, drawings, and specifications and superintending the building. As part of the letter, the letter head gives their names, "Adams & Adams, Architects," to which is signed their firm name. No doubt all parties contemplated that to have the building, when erected, superintended by the one who planned it, would insure better work.

In paragraph 6, the court found the parties modified said agreement to the extent that a change was made by the defendants and were paid on final settlement by the plaintiff $10 a trip from San Antonio, Tex., to the building near the city of Alice, Jim Wells county, Tex., instead of $18 a trip to Alice and $14 a trip to Alice when the defendant was going to Robstown or to Alice on other business.

Appellee obligated himself to perform this contract, impliedly in accordance with his own plans, whether they were defective, or his own superintending was; still it was to be done in Jim Wells county, and all cross-assignments are overruled.

The assignments having been fully considered, they are sustained.

The court erred in sustaining the plea of privilege, and the judgment is set aside, and the cause is remanded to Jim Wells county for trial.