**BOYD et al. v. GENITEMPO. (No. 7102.)**

(Court of Civil Appeals of Texas. San Antonio. March 12, 1924. Rehearing Denied April 9, 1924.)

**1. Trespass ⬙⟿8—Unlawful taking of personal property trespass.**

The unlawful taking of, or any unlawful interference with, another's personal property, however slight, and enjoyment by another of his personal property is a trespass warranting an action for damages.

**2. Venue ⬙⟿7—Lay against offending defendants in either county of inception or of completion of trespass.**

Where a trespass of deputy fish commissioners in wrongfully seizing plaintiff's seines had its inception in Nueces county and its conclusion in San Patricio county, venue in an action for damages lay in either county against those guilty of the trespass, and as to the offending defendants the action was properly brought in Nueces county, in view of Rev. St. art. 1830, subd. 9.

**3. Venue ⬙⟿7—As to state fish commissioner was properly laid where his deputies committed trespasses.**

Acts of deputies of the state game, fish, and oyster commissioner, committed in the course of their official employment, presumably in compliance with Vernon's Ann. Pen. Code Supp. 1922, arts. 923o, 923oo, were the acts of the commissioner, in view of his bond under Vernon's Ann. Civ. St. Supp. 1922, arts. 4004–4007, 4010, and where his deputies committed the alleged trespasses in Nueces county, venue as to the commissioner as well as to any of the aggressor deputies was properly laid in that county, in view of Vernon's Ann. Civ. St. Supp. 1922, art. 3977, and Rev. St. 1830, subd. 9.

**4. Fish ⬙⟿11—Principal and surety on bond of state fish commissioner charged with notice of commissioner's duties.**

The state game, fish, and oyster commissioner, as principal, and sureties on his bond, executed pursuant to Vernon's Ann. Civ. St. Supp. 1922, arts. 4004–4007, 4010, held charged with notice of the commissioner's powers, duties, and liabilities for wrongful use of his official authority and the legal effect of his undertaking when they executed his bond guaranteeing the individual members of the public in every county in the state against the wrongful acts of himself and his deputies.

**5. Evidence ⬙⟿10(6)—Court judicially knows distance between two counties.**

The court judicially knows that the distance between Wise county and Nueces county is approximately 500 miles.

**6. Principal and surety ⬙⟿59—Contract of sureties construed in accordance with general rules concerning written contracts.**

Contracts of sureties are to be construed in accordance with the general rules concerning written contracts, so as to give effect to the intention of the parties and the objects to be attained.

**7. Bonds ⬙⟿50—Statutory bonds to be more liberally construed than voluntary bonds.**

Bonds required by statute are to be more liberally construed than bonds voluntarily entered into, and words will be read into the statutory bonds for the protection of the public whenever necessary to render effectual the obvious intent of the parties.

**8. Venue ⬙⟿7—Sureties on bond of state game, fish, and oyster commissioner held suable in same county where commissioner was suable for trespasses committed.**

Where the state game, fish, and oyster commissioner was properly suable in Nueces county on his statutory bond, executed pursuant to Vernon's Ann. Civ. St. Supp. 1922, arts. 4004–4007, 4010, for a trespass in that county, committed presumably in compliance with Vernon's Ann. Pen. Code Supp. 1922, arts. 923o, 923oo, that bond were likewise suable in the same county, though neither of them lived therein (Rev. St. 1830, subd. 4) in view of Vernon's Ann. Civ. St. Supp. 1922, arts. 3977–3979, and Rev. St. art. 1830, subd. 9, and the obvious intention of the parties when executing the bond and the necessary implication arising from it, within article 1830, subd. 5, when construed in its relation to the statutes and despite Const. art. 1, §§ 9, 19.

**9. Constitutional law ⬙⟿305—Searches and seizures ⬙⟿7—Venue ⬙⟿19—Right to trial in county of residence superseded when it conflicts with Bill of Rights as to seizures and due process.**

The valuable right to be sued in the county of one's residence, vouchsafed to every citizen, subject to certain exceptions, becomes negligible when it conflicts with the rights guaranteed to the citizen in Const. art. 1, §§ 9, 19.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Gus Genitempo against W. W. Boyd and others. From an interlocutory order overruling plea of privilege, defendants other than defendant A. C. Thompson appeal. Affirmed.

W. A. Keeling, of Mexia, Riley Strickland, of Longview, and M. W. Burch, of Decatur, for appellants.

J. D. Todd, of Corpus Christi, for appellee.

SMITH, J. This is an appeal from an interlocutory order overruling a plea of privilege, which, being filed by appellants herein, and controverted by appropriate affidavits of appellee, was tried on its merits. The action was brought by Gus Genitempo against W. W. Boyd, state game, fish, and oyster commissioner, A. C. Thompson, his deputy, and G. B. Gunn, and others, sureties on his official bond. All the defendants reside in Wise county, except Thompson, who resides in San Patricio county, and who entered his appearance without claiming his venue privilege. The suit was brought in Nueces county, and from the judgment overruling their

⬙⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plea of privilege the defendants other than Thompson have appealed.

The pleadings and evidence support the statement we will now make of the case, and for the purpose of determining the merits of the plea of privilege these facts will be taken as true.

In the year 1922, and for some years prior thereto, Genitempo was engaged somewhat extensively in the business of gathering and marketing fish and other sea foods. His place of business was in Corpus Christi, and his fishing operations were conducted in the salt waters in that vicinity, under appropriate license from the duly constituted public authority. In the pursuit of his business he owned, used, and occupied valuable bay front properties, including wharves, fish houses, sail boats, skiffs, seines, and other equipment incident to the business. On December 7, 1922, two sailboats, owned by Genitempo and manned by his crews, were fitted up with seines, ropes, floats, sinks, and other fishing paraphernalia, together with ice, provisions, and other necessities, and as so equipped the expedition proceeded out to a point in Aransas Bay, in Nueces county. Here the two crews, in separate skiffs, set or spread four seines, each measuring 100 fathoms, or 600 feet, in length, but before any haul was made J. W. Witt, a deputy fish and oyster commissioner, acting under the instructions of Deputy Thompson, his immediate superior, and accompanied by one Reader, approached, accosted, and, in effect, arrested the two fishing crews, taking them and their skiffs and seines out of Nueces county into San Patricio county. The next morning the deputies destroyed the seines by fire, as being of unlawful length, or in unlawful use, presumably in attempted compliance with articles 923o and 923oo, Penal Code (Vernon's 1922 Supp. pp. 2249, 2250). On the same day it appears that Thompson filed complaints in Nueces county against the captains of the two sailboats, charging them with violation of articles 923o and 923oo, P. C., but subsequently they were acquitted in a jury trial on appeal to the county court of Nueces county.

It further appears from the record, for the purpose of testing the plea of privilege, that Genitempo was operating his business under appropriate license from the state; that the crews apprehended by the deputy commissioners were at the time lawfully fishing in waters open to them under the law for that purpose; and that the seines they were using had been duly registered, licensed, and tagged as required by law, and were of lawful dimensions, material, and construction. In other words, it may be said that neither Genitempo or his employés were violating any law at the time they were apprehended, nor had they been; that their equipment was in compliance with the law;

that the deputy commissioners wrongfully apprehended and detained said persons, and wrongfully seized, removed, and destroyed said property.

Venue over the persons of the defendants below was sought to be laid in Nueces county by reason of the exception contained in subdivision 9 of article 1830, R. S., in which it is provided that "where the foundation of the suit is some * * * trespass, for which a civil action in damages may lie," the "suit may be brought in the county where such * * * trespass was committed, or in the county where the defendant has his domicile." The acts complained of here were the seizure by appellants of the scines while in the possession of appellee's employés, the removal of the seines from Nueces county to San Patricio county, and their destruction there.

[1] The proposition is elemental that the unlawful taking of another's personal property, or any unlawful interference, however slight, with the enjoyment by another of his personal property, is a trespass, warranting an action for damages. Tested by this rule, the unlawful seizure, removal, and destruction of appellee's seines constituted a trespass, and under the exception embraced in subdivision 9, article 1830, an action for damages founded upon such trespass may be brought in the county in which the trespass was committed, or in the county where the defendant resides, or (under subdivision 4, art. 1830), where there are two or more defendants, the suit may be brought in any county where any of the defendants reside.

[2] It appears from the record that the seines were seized by the deputy commissioner while being used in Nueces county, and that while in the possession so obtained were removed to San Patricio county, where they were destroyed. These several acts of seizure, removal, and destruction each constituted a trespass, and all combined constituted a completed act of trespass, or a continuing transaction, which had its inception in Nueces county and its conclusion in San Patricio county. In such state of facts, venue lay in either county against those guilty of the trespass, and therefore as to the offending defendants this suit was properly brought in Nueces county. Article 1830, subd. 9; Pope v. Ray (Tex. Civ. App.) 244 S. W. 1033 (writ of error denied).

[3] It is conclusively shown, and apparently conceded, that the acts of trespass were directly committed in the course of their official employment by Deputy Commissioners Witt and Thompson, who, under the law, were appointed by, and were at all times subject to the orders of, and were therefore acting under and for and were responsible to, the state commissioner, Boyd (articles 4004–4007, Vernon's 1922, Supp.), who was "responsible on his bond, for the official acts

of his deputies" (Id., art. 4010). Accordingly the acts of the deputies committed in the course of their official employment, as these acts assuredly were, were the acts of the commissioner, and venue as to him as well as to any of the aggressor deputies, was properly laid in Nueces county, where the acts were committed. Article 3977 and Rev. St. art. 1830, subd. 9; Hays v. Creary, 60 Tex. 445; Lasater v. Waits, 95 Tex. 553, 68 S. W. 500; Connor v. Saunders, 9 Tex. Civ. App. 56, 29 S. W. 1140 (writ of error denied).

[4-8] We come now to the most difficult question presented in the appeal as to whether or not the sureties on Boyd's bond may enforce their privilege to be sued in the county of their residence, notwithstanding their principal was properly sued in another county, where neither of the several defendants resides. If either of the defendants was a resident of Nueces county, then it would not be difficult to determine that all the defendants would be suable there, under the exception contained in subdivision 4, article 1830, providing that, when there are several defendants residing in different counties, suit may be brought in the county in which either resides. But this exception is inapplicable here, and thus the single question indicated is stripped of all collateral elements.

It is somewhat remarkable that no case has been pointed out, and none has been found, involving the precise question, or leading by satisfactory analogy to a determination thereof. The Attorney General cites and relies largely upon the opinion of the Supreme Court in the case of Lasater v. Waits, 95 Tex. 553, 68 S. W. 500, and the cases therein cited, as well as other cases like them. But these cases are easily distinguishable from this one, and, although in the Lasater-Waits Case Judge Williams discusses the question here raised, that question was not directly involved, and the court expressly declined to decide it. It is provided by statute that the state game, fish, and oyster commissioner shall take the oath prescribed for and exercise the power and authority given to sheriffs by the laws of the state. Articles 3977–3979. If there were any cases deciding the question of venue over sureties on sheriffs' bonds, such cases might be helpful in determining the question now presented, but there seem to be no such cases. And so the question now presented becomes one of first impression.

It is, of course, true, as urged by the Attorney General in behalf of appellants here that it is only by express stipulation or clear implication that a citizen may be held to the performance of an obligation in a county other than that of his residence, and that in the official bond of the commissioner there was no express agreement on the part of principal or surety to perform the obligation of the bond in Nueces or any other particular county in the state. And so, unless they are so held by clear implication to performance in Nueces county, the sureties may well question the venue of the courts of that county over them, in so far as they are amenable thereto, by reason of subdivision 5, article 1830, in which it is provided that, where a person has contracted in writing to perform an obligation in a particular county, suit may be brought either in such county, or in the county of the defendant's domicile.

It is true the principal in this bond is suable in Nueces county, although not a resident thereof, but he is suable there by reason of the claim that he committed a trespass there, and not because of any express provision of the bond. The sureties are in a different situation. They are not liable because of any trespass they or their agents committed, but alone because of their written obligation to indemnify persons injured by such trespass when committed by the principal, and they are not bound by any express stipulation to perform that obligation in Nueces, or any particular county.

So, if venue as to the sureties is properly laid in Nueces county, it must be based alone upon a necessary implication, arising from the language or nature of the bond, that the obligation thereof shall be performed in said county. If this implication is present, it will be as effectual as if its effect had been definitely expressed in the contract. Presnall v. Adams (Tex. Civ. App.) 214 S. W. 357, and authorities there cited.

The power and authority of the fish, game, and oyster commissioner are, of course, coextensive with the territorial limits of the state. He is bound by his oath of office, and obligated by his official bond to a faithful performance of his duty wherever it calls him, in every part of every county of the state. And if, through ignorance, incompetence, carelessness, or malice, he wrongfully uses the power and authority of his office to oppress the citizen, or trespass against the person or property of the citizen, he is liable directly and upon his official bond for injuries flowing to the citizen from his wrongful acts, and this is true regardless of the county or counties in which the wrongs are committed. The sanctity of his oath and his civil responsibility follow him, in his official undertakings, to every nook and corner of the commonwealth, and no spot is so remote as to be beyond the obligation of his bond to protect the citizen against his blunders. He and the sureties on his bond are of course charged with notice of these principles and the legal effect of his undertaking when they executed his bond, which, for the purposes of this case, is but a guaranty to the individual members of the public in every county in the state against just such wrongs as are complained of in this suit.

(260 S.W.)

If the exercise of the power and authority of the commissioner had been limited by the law to a particular county, the liability of the principal and the sureties on his official bond would have been limited to acts committed within that county, and, although not expressly so stipulated, those bound on the bond would be held to performance in the particular county, because, by reason of the nature of the obligation, it was necessarily performable alone in such county. The parties would be bound by this necessary implication, and would be suable for a trespass committed by the principal in that county, even though none of them resided therein. The obligation thus assumed by principal and surety was for the benefit of every citizen in the county, although none were nominated in the bond, and became payable to any given citizen upon the happening to him of any contingency therein provided against. This hypothetical case is stated for the purpose of applying the principle by analogy—of extending the liability of the parties by analogy—to every citizen in every county in the state, where the bond is of a state, rather than of a county official.

In this case, as we have shown, the official was not restricted to a particular county or subdivision of the state in the exercise of his power and authority; that power and authority potentially extended into and throughout every county in the state, and to every citizen thereof, and the official bond inured to the benefit and guaranteed the protection of each such citizen against the unlawful exercise of that power and authority just as certainly and effectually as if every citizen had been named and the county of his residence designated in the instrument.

And so it is by this to us apparently clear implication that both principal and sureties bound themselves to indemnify the appellee against any trespass which might be committed against him or his property by appellant Boyd, or his deputies. Appellee resided, and his property was situated, in Nueces county, and it was there that appellant Boyd, through his deputies, found and unlawfully seized it, whereby a trespass was committed in that county, against which very act, as well as every unlawful act committed by Boyd in the course of his official employment, the latter and the sureties on his bond obligated themselves to protect appellee. We think that by necessary implication the principal and sureties contracted to perform the obligation of their bond in Nueces county in the contingency shown to have arisen, and venue as to all of them was fixed by the event.

To hold otherwise would have the practical effect of nullifying the statute requiring the state commissioner to give bond, in so far as it provides the public with protection against trespasses and other wrongs done by that official, for the very plain reason that no matter in what county a cause of action might arise against that official, nor how just the cause, the injured or oppressed citizen would be required to go to the home county of the obligors on the bond in order to institute and prosecute his suit. In such case the injured citizen would be forced, often at prohibitive expense, to submit his cause to strangers, in a forum far removed from the scene of the trespass, whereas the Legislature clearly intended and expressly provided by statute that the plaintiff in such action should have the right to bring his suit in the very county where the wrong is done, and where, as a rule, the witnesses are to be found and are known to court and jury. This very case demonstrates the injustice of the contrary contention. Appellee resides, and the trespass was committed against him and his property, in Nueces county. It is apparent from the record that all the witnesses for both sides, of which there are ten or more, reside in Nueces or the adjacent county of San Patricio. Commissioner Boyd and the sureties on his bond reside and claim their privilege to be sued in Wise county. We judicially know that the distance between the two counties is approximately 500 miles. If the sureties are entitled to assert their privilege in this suit, then the expense to which appellee must go in order to institute and prosecute his suit in that county is practically prohibitive, for not only must he in person make the several trips usually required of litigants, but he would be obliged on one or more occasions to take his witnesses, of which the record shows at least six, from Corpus Christi to Decatur, the county seat of Wise county, and return, and in addition to the expense of maintaining these witnesses and himself on those trips he would be obliged to go to the further expense of employing local counsel in his case. Add to this burden the hazard of trying his cause to a strange jury, in an alien forum, among neighbors, friends, and perhaps partisans of his presumably powerful adversary, his undertaking would be so burdensome and the outcome so doubtful, however just his cause, that in many if not every case the injured citizen would be without a remedy for his wrongs, however grievous they may appear to him, and may in fact be. And if he should be a poor man whose only property was that which had been destroyed by his adversary, under color of official power and authority, he would be completely cut off by the assertion of the privilege here claimed.

In former days sureties were much favored by the law, and their contracts strictly construed in their behalf. But this is no longer true, and their contracts are now construed in accordance with the general rules concerning written contracts, so as to give effect to the intention of the parties and the ob-

jects to be attained, and not to defeat such intention or object.

Bonds required by statute, however, are given a more liberal construction than are bonds voluntarily entered into, and words will be read into them for the protection of the public whenever necessary to render effectual the obvious intent of the parties. Brandt, Surety and Guar. § 105.

And to this very just and reasonable modification of the general rule should be added the further modification that, where bonds are required by statute, the statutes upon which they rest, and to which they relate, should be read into them, although this application would not extend to voluntary bonds. The public has a direct interest in official and other bonds required by statute, and such bonds when given should be so construed as to give effect to the protection contemplated by the statute. This extension of the general rule does not harshly or unjustly affect the parties to the bond, for they know its purposes at the time they execute it.

Applying the foregoing tests to the case in hand, we are of the opinion that it was the object of the statute in requiring, and the intention of the parties in making, this bond to give equal protection to every citizen of the state wherever he may be oppressed in the manner pointed out by the venue statute and contemplated in the bond; that in executing the bond the sureties thereon undertook to follow their principal wherever he should go in the course of his official employment, and sponsor his acts and make good his affirmative defaults in whatever jurisdiction to which he might be answerable.

Accordingly, it being obvious that the principal was properly suable in Nueces county on the trespass complained of, we have concluded that, in view of the statutes, the obvious intention of the parties, and the necessary implication arising from the nature of the bond when contrued in its relation to the statutes, the sureties were likewise suable in the same county. The trial court correctly so held.

[9] Much is said by the Attorney General about the valuable right of appellants to be sued in their home county, and it is true that this is a valuable right vouchsafed to every citizen, subject to certain exceptions, some of which we have adverted to herein. But this right becomes negligible when it conflicts with those guaranteed to the citizen in sections 9 and 19 of the Bill of Rights, as contained in article 1 of the Constitution of this state, which provides that "the people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches," and "no citizen of this state shall be deprived of life, liberty, property, privileges or immunities, * * * except by the due course of the law of the land." It is alleged in the case, and there is evidence tending to support the allegations, that persons clothed with official power, and unlawfully exercising that power in disregard of the rights of citizens lawfully engaged in a business under the express authority of the state, seized those citizens, took possession of their property, removed it to another jurisdiction, arbitrarily condemned it as being without the protection of the law destroyed it, and subjected those from whose possession it had been taken to a prosecution from which they were not relieved until acquitted by a jury of their peers. If these allegations and the testimony offered in support of them are found in a trial upon the merits to be true, then the conduct of the officials responsible for the alleged wrongs is in direct and flagrant contravention of the quoted provisions of our Bill of Rights, and under the statute those responsible therefor are properly suable in the very county in which the wrongs were committed, and by their conduct have cut themselves off from their normal privilege of being sued in their home county.

The judgment is affirmed.