

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN      AUSTIN 11, TEXAS
XXXXXXXXXXXXXXXXXXXXXXD
ATTORNEY GENERAL

Honorable John C. Marburger
County Attorney
Fayette County
La Grange, Texas

Dear Sir:          Opinion No. O-2708
                 Re: Liability of surety upon
                     statutory bond of driver of
                     school bus, under contract
                     with Carmine Independent
                     School District, for act or
                     omission of a substitute
                     driver under the four factual
                     situations stated.

       Your letter of September 3, 1940, submits for
the opinion of this department the following questions:

       "I am herewith enclosing a copy of a con-
tract entered into by the school board of the
Carmine Independent School District and W. F.
Graeber as driver of the school bus for said
independent school district. I am also enclos-
ing a copy of the bond entered into by W. F.
Graeber, as principal, and St. Paul-Mercury
Indemnity Company, of St. Paul as surety, to
secure a faithful performance of the afore-
mentioned contract. Mr. Graeber, the contract-
ed bus driver, is to transport pupils within
the district only, and the bus is owned by
the school district.

       "Under the terms of the enclosed bond and
contract, would the surety be liable in a cause
of action due to some act or omission of a 'sub-
stitute driver' in the following cases:

       "(1). Where the regular bus driver se-
cures a substitute driver with the knowledge
and consent of the school superintendent;
such substitute driver to serve at the will
and pleasure of the regular driver and not
only in 'urgent cases.'

"(2). Where the regular driver, in urgent cases, secures a substitute driver with the knowledge and consent of the school superintendent.

"(3). Where the regular bus driver secures a substitute driver without the knowledge and consent of the school superintendent; such substitute driver serving at the will and pleasure of the regular driver and not only in urgent cases.

"(4). Where the regular driver, in urgent cases, secures a substitute driver without the knowledge and consent of the school superintendent."

The amount, terms and conditions of the bond under consideration here, are fixed by Article 2687a, Vernons Annotated Revised Civil Statutes of Texas as follows:

"The trustees of any school district, common or independent, making provision for the transportation of pupils to and from school, shall for such purpose employ or contract with a responsible person or firm. No person shall be employed to transport pupils, who is not at least twenty-one years of age and a competent driver of motor vehicles and sound in body and mind. All motor vehicles operated by school districts, directly or by contract, in the transportation of pupils shall be covered and so glassed or curtained at the sides and rear as to protect the pupils from the inclemencies of the weather, and shall at all times be equipped with efficient lights and brakes. The drivers of all school transportation vehicles shall be required to give bond for such amount as the Board of Trustees of the district may prescribe, not less than $2,000.00 payable to the district, and conditioned upon the faithful and careful discharge of their duties for the protection of the pupils under their charge and faithful performance of the contract with (said) School Board; and they shall, before crossing any railroad or interurban railway tracks, bring their vehicles to a dead stop. Failure to stop before crossing such railway as pro-

vided herein shall forfeit the drivers con-
tract and, in case of accident to pupils or
vehicles the bond shall be forfeited and the
amount and all right thereunder shall be
determined by a court of competent jurisdic-
tion. (Acts 1929, 41st Leg., 1st C.S., p.
96, ch. 42 § 1)."

It will be noted that the foregoing statute is
silent upon the right and authority of a school bus driver,
or the trustees of a school district, to arrange or pro-
vide for a substitute driver under any conditions, urgent
or otherwise. But there appearing in the statute, either
expressly or by implication, no denial or prohibition of
the use by the contracting parties of a substitute driver,
we think it is competent for the parties involved to con-
tract in this regard and be governed thereby.

In this connection, the copy of the bus driver's
contract submitted by you provides:

"It is also agreed that this contract shall
not be transferred to a third party without
written permission from the school board, and
that no driver shall be substituted, except in
urgent cases, without consent of the school
superintendent."

We construe this language of the contract to mean
that a school bus driver may be substituted for the driver
under contract, only with the consent of the school super-
intendent, but that such substitution may be had and con-
sent given in all instances deemed necessary and desirable,
and is not limited to "urgent cases." Under the plain
language of the contract, "urgent cases" constitutes the
one exception to the procuring of the consent of the school
superintendent. Stated otherwise, in "urgent cases" a
driver of a school bus may be substituted for the driver
under contract, even without consent of the school super-
intendent, but in all other cases such substitution may
be made by first procuring the consent of said superin-
tendent.

It but remains to be determined if this con-
tractual provision governing the use of a substitute driver
of a school bus, owned and operated by Carmine Independent
School District, may, as a matter of law, be read into the
obligation and condition of the contract of suretyship en-
tered into by St. Paul-Mercury Indemnity Company of St.

Paul, so as to render said surety liable for any actionable act or omission of a driver of said school bus, substituted for W. F. Graeber, the contracted driver and the principal in said bond. In our opinion, this contractual driver substitution clause should be considered as incorporated into the obligation and condition of the surety bond, both by the express terms of said bond and under the authorities of this State.

We quote the condition of the bus driver's bond in question:

"If said party shall well and truly perform the conditions and obligations imposed by reason of Chapter 42, Acts of the Forty-first Legislature, First Called Session, and of this contract on reverse side with said board of trustees entered into this 9th day of September, 1940, then this bond shall be null and void, otherwise to remain in full force and effect." (Underscoring ours)

Bonds and other instruments executed as a part of the same transaction are to be construed together. This principle of construction finds support in the Texas cases. 7 Texas Jurisprudence, page 85. The instant case is a stronger one for the application of this doctrine, because not only were the instruments executed as a part of the same transaction but the terms of the contract are expressly incorporated into the bond by reference. That such instruments will be construed together is established by the cases of Ward vs. Hubbard, 62 Tex. 559; Witherspoon Oil Company vs. Randolph (Com. App.) 298 S. W. 520; Marsh vs. Phillips, 144 S. W. 1160.

Additionally, we point to the equally well established rule of construction that bonds required by statute will be liberally construed in the public interest in order to effectuate the purpose intended. This is upon the theory that the public has a direct interest in such bonds, and they will be construed so as to give effect to the protection contemplated by the statute; in fact, to accomplish this end, such bonds are given a more liberal construction than bonds voluntarily entered into. 7 Texas Jurisprudence, page 84-85; Farmers State Bank vs. Brazoria County 275, S. W. 1103; Boyd vs. Genitempo 260 S. W. 934.

The instant case calls for the application of this rule of liberal construction because the school bus driver's bond and contract of employment, and the statute providing for their execution, manifests the intent that the obligation of the bond is for the benefit of the school children to be transported, or, in other words, for the benefit of the public. In the following cases involving a school bus driver's contract and bond, identical in terms and condition to the ones executed in the instant case under Article 2687a, Vernon's Annotated Revised Civil Statutes of Texas, the courts held that such bonds were executed for the benefit of the school children to be transported rather than for the benefit of the trustees--nominal obligees in such bonds. Draper et al vs. Robinson et ux, 106 S. W. (2d) 825; Robinson et ux vs. Draper, et al (Com. of App.) 127 S. W. (2d) 181, reversing upon another ground; Reeves et al vs. Tittle, 129 S. W. (2d) 264.

The case of Draper et al vs. Robinson et ux, supra, involved a tort action brought against the principal and surety on a school bus driver's bond, for death of a scholastic as a result of the alleged negligence of said principal's son, acting as substitute driver. The bond and contract involved each contained the clauses and features hereinabove discussed. The Court of Civil Appeals reversed a judgment for plaintiffs and declared that no liability rested against the surety, in the following language:

"We see no escape from the conclusion that Republic Underwriters would not be liable. The obligation of the surety as expressed in the bond was, in substance, to answer for the conduct of R. L. Draper. It did not purport to include the servants or agents of R. L. Draper, nor a transferee of the contract, nor a substitute driver, whether with or without the permission of the school board or county superintendent."

The Supreme Court of Texas, in the case of Robinson et ux vs. Draper et al, supra, affirmed the judgment of the Court of Civil Appeals insofar as same reversed the judgment of the trial court, (but upon a different ground) and modified said judgment insofar as same was rendered that plaintiff take nothing, remanding the case for a new trial. The reversal and remand was upon the ground of a fatal variance between the driver's contract and bond alleged to be executed in accordance with Article 2687a, Vernon's Annotated Revised Civil

Statutes of Texas, and the contract and bond put in proof, showing it to be merely a common law bond rather than a statutory bond. Nevertheless, we submit that the above quoted opinion of the Court of Civil Appeals was necessarily overturned by the following declaration of the Commission of Appeals, upon the issue of liability of a surety on a school bus driver's bond for the negligence of a substitute driver:

"Since we do not have the facts before us, any decision which we might make of the other questions presented would be upon supposable facts. Until the facts are developed we cannot satisfactorily determine the question of whether Draper should be held for the negligence of his son who was driving the bus on the occasion of the injury. The Bond offered in evidence, viewed as a common law obligation, should not be construed, as a matter of law, as excluding liability for the negligence of Thurman Draper. The facts with reference to his employment have not been developed. In view, however, of another trial we feel constrained here to observe that, after a careful consideration of the bond offered in evidence, in the light of the contract offered in evidence, the material provisions of which are set out in the opinion of the Court of Civil Appeals, we are of the opinion that it was made for the benefit of the children to be transported whoever they may have been. We can give no other meaning to the bond. The County Board of Trustees had no financial interest to protect. It was simply administering a state fund provided to aid rural schools and could suffer no financial loss by a breach of the contract. It obligated itself to pay no consideration for the transportation of the children; the only consideration to be received by Draper being that provided by the State. If the bond was not made for the benefit of the children to be transported it amounted to nothing at all. True, it afforded but scant protection to children, but that fact alone is not controlling." (Underscoring ours)

Considering that the bond involved here is a statutory bond, required to be executed for the protection of school children transported by bus, while the bond before the Supreme Court in the case discussed above is a voluntary common law bond, we think, under the liberal rule of

construction accorded bonds executed in the public interest, the instant case is a stronger one for holding that a surety on a school bus driver's bond is not relieved, as a matter of law, from the negligence of a substitute driver, resulting in injury to a scholastic being transported.

Moreover, as fully pointed out, the bus driver's contract expressly allows a substitution of drivers, with the consent of the school's superintendent, and, in urgent cases, contemplates such substitution without the consent of the said superintendent. Inasmuch as such contractual provision is, under the authorities above cited, read into the bus driver's bond, as a matter of law, and, moreover, is expressly incorporated into the obligation of said bond by reference thereto in the bond, we perceive no reason, in law or in equity, why the surety on said bond should not be bound by the consequences thereof.

We accordingly answer your first, second, and fourth questions affirmatively and your third question in the negative.

However, in view of the fact that your inquiry is prompted by a desire to see scholastics transported by school bus, protected by a bonded driver, we think it not amiss to suggest to you and the school authorities to whose attention this opinion may be brought, that this question should be removed from the field of construction by requiring in the face of school bus drivers' bonds hereafter executed, a direct assumption and obligation on the part of the principal and surety in such bonds to answer for any act or omission of a substitute driver.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly,

ATTORNEY GENERAL OF TEXAS

PMN:RW:MJS
APPROVED SEP 27, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

By      /s/
          Pat M. Neff, Jr.
          Assistant

APPROVED OPINION COMMITTEE
BY _BWB_, CHAIRMAN