DR. JUDGE M. LYLE V. LEONA WADDLE.

No. A-594. Decided July 11, 1945.
(188 S. W., 2d Series, 770.)

*John T. Pearson* and *John T. Gano,* both of Fort Worth, for appellant.

*Rollins, Clark & McWhirter,* and *A. S. Rollins,* of Greenville, for appellee.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

The Court of Civil Appeals for the Fifth Supreme Judicial District has certified to this court four questions of law arising in a cause appealed to that court from an order of the district court of Hunt County overruling a plea of privilege. The manner in which the questions arise and the material facts, shown by the certificate, the tentative opinion of the Court of Civil Appeals, which is referred to by the certificate for a full statement of facts, and the transcript, are as follows:

Appellee, Mrs. Leona Waddle, a widow residing in Hunt County, filed suit in the district court of that county against

appellant, Dr. Judge M. Lyle, a practicing physician residing in Tarrant County. Appellee's petition alleges two grounds of recovery, libel in a letter written by appellant and alleged to have been published by him, the effect of which, appellee alleges, was to charge that she was suffering from and had been treated for a contagious or infectious disease, and gross negligence on the part of appellant in diagnosis and in his treatment of appellee.

Appellant's plea of privilege in statutory form to be sued in Tarrant County, where he resides, was controverted by appellee, who sought to maintain venue in Hunt County under subdivision 29 of Article 1995 of the Revised Civil Statutes of 1925, on the ground that a libel was published by appellant in Hunt County, where appellee resided at the time of the accrual of the cause of action, and under subdivision 9 of Article 1995, on the ground that in appellant's treatment of appellee a trespass was committed by him against her which was a continuing trespass, having its inception in Tarrant County, but having its completion, in Hunt County, in which appellant suffered her major injuries.

The second and third questions certified, which relate to venue under subdivision 29, will be considered first. They are as follows:

"Second. Was delivery by appellee to Dr. Kennedy of the letter given her by the appellant for the purpose and under the circumstances mentioned, appellee knowing at the time its meaning and purpose, a publication by her of the alleged defamatory matter?

"Third. Under the facts heretofore stated, did appellee's alleged cause of action for libel against the appellant, if a cause of action existed, accrue in Hunt County?"

■ The effect of the filing of the plea of privilege and the controverting affidavit invoking subdivision 29 of Article 1995 was to impose on appellee, plaintiff in the trial court, the burden of proving on the hearing of the plea of privilege that a cause of action for libel in fact accrued in her favor. A. H. Belo Corp. v. Blanton, 133 Texas 391, 129 S. W. (2d) 619; Renfro Drug Co. v. Lawson, 138 Texas 434, 160 S. W. (2d) 246, 146 A. L. R. 732. There is no libel unless there is a publication, for the gist of an action for libel is injury to the plaintiff's reputation. A. H. Belo & Co. v. Fuller, 84 Texas 450, 453, 19 S. W. 616, 31 Am. St. Rep. 75; Renfro Drug Co. v. Lawson, 138 Texas 434, 160 S. W. (2d) 246, 146 A. L. R. 732; Cohen v. New York Times, 153 App. Div. 242, 138 N. Y. S. 206; Freeman v. Day-

ton Scale Co., 159 Tenn., 413, 19 S. W. (2d) 255; Newell's Slander and Libel (4th Ed.) pp. 218-220, Sec. 175, 33 Am. Jur., Libel and Slander, Sec. 90, pp. 103-104. Under the facts, the controlling question, as far as the right of appellee to maintain venue in Hunt County under subdivision 29 is concerned, is: Was there a publication by appellant of a libel?

Appellee operated a beauty parlor in Fort Worth, Tarrant County and, being required by statute to have a health certificate, she went to appellant for examination. He advised her after examination that she was diseased and that treatment by injections of drugs was necessary. He gave her several of such treatments, which caused first an itching sensation and later pain and suffering. After six treatments her suffering became so intense that she refused to submit to further treatments and was compelled to close her business in Fort Worth and return to her former home in Greenville, Hunt County. After she returned to Greenville her suffering from the treatments administered in Fort Worth continued and increased in intensity. Her hands and feet became swollen, her skin peeled off and she was confined to her room for several months, and frequently to her bed, all the result, as she contended, of an overdose of arsenic administered by appellant.

Before she left Fort Worth appellee told appellant that she was moving to Greenville, and he told her the injections would have to be continued. She asked what the injections were and he told her he would write her Greenville doctor and advise him what he was giving her. Appellant did not write the Greenville doctor, but appellee, before leaving Fort Worth, sent her sister to appellant for the letter and appellant wrote and gave to appellee's sister a letter, which is as follows:

"September 25, 1942. Miss Leona Waddle, Room 604 Westbrook Hotel, Fort Worth, Texas. My Dear Miss Waddle: We are giving you the following information so that you may pass it on to your doctor. We have given you, since September 1, three shots of bismuth and three hsots of Neo. Very truly yours, Judge M. Lyle, M. D."

The tentative opinion of the Court of Civil Appeals states that appellee requested appellant to write a letter to be shown to her Greenville physician and quotes testimony of appellee that appellant issued the letter at her request. On October 26, 1942, appellee consulted and placed herself under the treatment of a Dr. Kenney in Greenville, and showed him the letter written by appellant.

Appellee's claim for damages for libel is on the theory that

the letter was defamatory, meaning by necessary implication, and understood by any physician to mean, that she was unchaste and had a loathsome disease, for which appellant had been treating her; that the letter was written for the purpose of being exhibited to her physician in Greenville; and that its exhibition to the physician was the publication by appellant of a libel.

■ We express no opinion as to questions, other than that of publication, which may be suggested by the facts above stated. It is our opinion that the second and third certified questions are answered by the rule that if the publication of which the plaintiff complains was consented to, authorized, invited or procured by the plaintiff, he cannot recover for injuries sustained by reason of the publication. Renfro Drug Co. v. Lawson, 138 Texas 434, 443, 160 S. W. (2d) 246, 146 A. L. R. 732; Patterson & Wallace v. Frazer, 79 S. W. 1077; Rosenbaum v. Roche, 46 Texas Civ. App. 237, 101 S. W. 1164; Bull v. Collins, 54 S. W. (2d) 870; Rivers v. Feazell, 58 S. W. (2d) 133; Taylor v. McDaniels, 139 Okla. 662, 281 Pac. 967, 66 A. L. R. 1246; Freeman v. Dayton Scale Co., 159 Tenn. 413, 19 S. W. (2d) 255; Shinglemeyer v. Wright, 124 Mich. 230, 82 N. W. 887, 50 L. R. A. 129; 33 Am. Jur., Libel and Slander, Sec. 93, pp. 105-106, Sec. 104, p. 110.

Appellee requested appellant to write the letter stating what treatments had been given her, or at least she consented to the writing of the letter in order that it might be shown to her physician. The letter was neither addressed nor mailed to the Greenville physician, but it was addressed to appellee and she sent her sister to appellant to obtain it. It is true that appellant wrote the letter in order that appellee might show it to the physician in Greenville so that he would know what the treatment had been; but appellee was free to make that use of the letter or not to use it. The letter states: "We are giving you the following information so that you may pass it on to your doctor." There is no suggestion that appellant misled her as to the meaning of the contents of the letter. Appellee held the letter in her possession and under her control for a month, and when she voluntarily disclosed the contents of the letter to the Greenville physician she, and not appellee, accomplished the publication.

Our answer to the second and third certified questions is as follows: The delivery of the letter by appellee to Dr. Kennedy for the purpose and under the circumstances shown by the certificate was a publication by appellee, and not by appellant, of the alleged defamatory matter; and under the facts stated a cause of action for libel did not accrue in favor of appellee.

The fourth certified question is as follows:

"Fourth. Was the trespass complained of, that is the alleged negligent diagnosis and treatment of appellee by the appellant causing her suffering and damages in both Tarrant and Hunt Counties, a continuing trespass authorizing suit in either county within the meaning of subdivision 9, Article 1995?"

Subdivision 9 provides:

"A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile."

■ Appellee, relying upon that subdivision for venue in Hunt County, had the burden of pleading and proving that a trespass was in fact committed in Hunt County. Coalson v. Holmes, 111 Texas 502, 240 S. W. 896; Compton v. Elliott, 126 Texas 232, 88 S. W. (2d) 91; Brown Express, Inc. v. Arnold, 138 Texas 70, 157 S. W. (2d) 138; City of Mineral Wells v. McDonald, 141 Texas 113, 170 S. W. (2d) 466.

As shown by the facts submitted by the Court of Civil Appeals, the substance of which has been given, all of the treatments, the injections of drugs, which caused injuries to appellee, were administered by appellant in Tarrant County. The injuries from the treatments were first suffered by appellee in Tarrant County, and after she left that county and returned to her former home in Hunt County her suffering from the treatment in Tarrant County continued and increased in intensity. The contention made by appellee is that appellant, by the injection of drugs into appellee's veins in Tarrant County, set in motion an agency which he knew would inflict physical injury many days in the future, that the agency thus set in motion by appellant inflicted serious injury upon appellee in Hunt County, and that thus appellant by the agency adopted did commit a trespass in Hunt County.

In our opinion the argument confuses injury caused by the trespass with the trespass itself. The misfeasance or the wrongful act is the trespass. Bouvier's definition of trespass is:

"An unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another." Bouvier's Law Dictionary, (3rd Rev.) Vol. 3, p. 3316.

Bishop speaks of an "act of wrong" as an actionable trespass. Bishop's Non-Contract Law, p. 73, Sec. 187. Generally the

definitions designate the wrongful act as constituting the trespass. Cooley's Blackstone, (3rd Ed.) Vol. II, p. 69, Book III, p. 123; 52 Am. Jur., Trespass, Sec. 6, p. 839; 63 C. J. p. 886, Sec. 1, p. 888, Sec. 4; Words and Phrases (Perm. Ed.) Vol. 4, pp. 431-452. Frequently the word injury is used in its secondary meaning as having reference to an act which damages, harms or hurts, but ordinarily and primarily the word means the damage or hurt done to or suffered by a person or thing. Words and Phrases (Perm Ed.) Vol. 21, pp. 414-443; Webster's New International Dictionary. While it is true that an action for compensatory damage may not be maintained unless the trespass has caused injury, the trespass is the misfeasance or wrongful act, and the injury is the result of the trespass rather than a part of it. The statute under consideration uses the words "in the county where such crime, offense or trespass was committed." Appellant's acts of which the suit complains were *committed* in Tarrant County. The resulting injuries were in part suffered in Hunt County.

The decision which, in construing subdivision 9 of Article 1995, draw a distinction between active and passive negligence support the conclusion that the wrongdoer's act is the gist of the trespass to which subdivision 9 refers. They hold that the word trespass as here used embraces only wrongful acts, wilfully or negligently committed, and not mere omissions to do what should have been done. Ricker, Lee & Co. v. Shoemaker, 81 Texas 22, 25, 16 S. W. 545; Connor v. Saunders, 81 Texas 633, 17 S. W. 236; Meredith v. McClendon, 130 Texas 527, 111 S. W. (2d) 1062, 1063. In the case last cited Associate Justice Sharp quoted with approval from McCrary v. Coates, 38 S. W. (2d) 393, as follows:

"It is well settled that a trespass in the meaning and intent of this statute is not shown by allegation or proof of a nonfeasance or mere negligent omission to perform a duty. To constitute a trespass under this statute there must be an affirmative act of negligence, not necessarily such affirmative act as would be inherently unlawful and constitute a crime or offense against the public, but an affirmative act as distinguished from an omission of duty."

Decisions of the Court of Criminal Appeals as to venue for prosecution of the crime of abortion are in point. The general venue statute which is applicable to that offense provides that the proper county for the prosecution of the offense is that "in which the offense was committed." Art 211, Code of Criminal Procedure. It is held that if the means or medicine which procures the abortion is used or administered in one county and

the abortion occurs in another county, venue lies in the first county. In so holding the court said that although the final consummation of the offense occurred in the second county, the sole cause of it was set in motion by the accused in the first county, and that because he put in operation a force in one county which produced its results in another, the accused was responsible in the form where he performed the acts which resulted in the abortion. Moore v. State, 37 Texas Cr. 522, 40 S. W. 287; Humphries v. State, 93 Texas Cr. 399, 248 S. W. 374. The force which produced the injurious results to appellee in Hunt County was put in motion by the acts of appellant in Tarrant County. As in each of the cases last cited, it was held that the offense was committed in the county where the wrongful acts were performed, so here the "trespass was committed" in Tarrant County where the drugs were injected.

Three of the decisions upon which appellee relies are cases of trespass beginning in one county and continued in another. In one of the cases, Brooks v. Hornbeck, 274 S. W. 162, the trespass was the negligent setting of a broken leg. The physician who was sued set the broken leg in Limestone County, took the plaintiff to Falls County, and there twice reset the leg, cutting off part of the broken bone. There was testimony that if the leg had been set properly in Limestone County there would have been no necessity to reset it or to cut off the end of the bone. It was held that the trespass was a continuing trespass and that venue in a suit for the damages as a whole might be laid in either county. In Pope v. Ray, 244 S. W. 1032, and Boyd v. Genitempo, 260 S. W. 934, property of the plaintiff was wrongfully taken by the defendant from one county into another. The trespasses in those cases were continuous acts of the defendants begun in one county and completed in another, and the suits could be brought in either county. In the instant case appellant did nothing in Hunt County.

In other cases cited by appellee the force set in motion by the defendant first made contact with the person or property of the defendant in the county in which the suit was brought. For example, in Universal Mills v. Kennedy, 27 S. W. (2d) 318, pieces of metal contained in sacks of feed shipped by the defendant from Fort Worth were swallowed by the plaintiff's cattle in Val Verde County, where the suit was brought. See also Winter v. Terrell, 42 Texas Civ. App. 598, 95 S. W. 761; Peaslee-Gaulbert Co. v. McMath's Adm'r., 148 Ky. 265, 146 S. W. 770; Smith v. Southern Ry. Co., 136 Ky. 162, 123 S. W. 678, 26 L. R. A. (N. S.) 927; Masonite Corp v. Burnham, 164 Mass. 840, 146 So. 292, 91 A. L. R. 752. In the instant case the injurious medicine entered appellee's body when the treatments were

given in Tarrant County. The trespass against the person of appellee was completed in that county.

Substantially the same contention was made in Wiese v. Becker, 294 S. W. 991, as is made in this case. The suit against a physician was for injuries suffered by plaintiff as the result of the negligent setting and bandaging of a broken arm. The allegations of the controverting affidavit, stricken on general demurrer, were that the defendant negligently set and bandaged the arm in Washington County and directed the plaintiiff to return to her home in Austin County, where she suffered intense pain and where, by reason of the unskillful setting and bandaging of the arm, the bones became incorrectly set and some of the ligaments were severed by the bandage and the arm was turned or twisted so that she lost the use of her hand. The court held that the suit could not be brought in Austin County because there were no allegations of an affirmative act constituting a trespass committed by the defendant in that county, the allegations showing on the contrary that everything the defendant did took place, not in Austin County, where the suit was brought, but in Washington County. In answer to the contention that there was a continuing trespass the court said:

"In order to constitute a 'continuing trespass', begun in one county and concluded in another, there must be some affirmative act constituting a trespass committed in each county. The negligent or unskillful setting and bandaging of appellant's broken arm in Washington County, from which her injury subsequently resulted in Austin County, did not constitute a 'trespass' in the latter county, as that term is used in our venue statute."

Our answer to the fourth certified question is: The trespass complained of by appellee, under the facts submitted by the Court of Civil Appeals, was not a continuing trespass authorizing suit in either county within the meaning of subdivision 9 of Article 1995, but was a trespass committed in Tarrant County.

It becomes unnecessary to answer the first of the questions certified.

Opinion adopted by the Supreme Court July 11, 1945.