

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00045-CV

---

STEPHEN NOLAN BEDFORD AND
AUTUMN BEDFORD

APPELLANTS

V.

DARIN SPASSOFF AND 6 TOOL,
LLC, FORMERLY KNOWN AS
DALLAS DODGERS BASEBALL
CLUB, LLC, D/B/A DALLAS
DODGERS BASEBALL

APPELLEES

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 096-275689-14

----------

## DISSENTING OPINION

----------

## I. INTRODUCTION

I respectfully dissent.  Appellees Darin Spassoff and 6 Tool, LLC, formerly known as Dallas Dodgers Baseball Club, LLC, d/b/a Dallas Dodgers Baseball (collectively Dodgers) filed suit for libel based on two written statements.

Because as a matter of law the elements of libel cannot be established concerning either of the written statements, I dissent from the majority's failure to reverse the trial court's judgment denying Appellants Stephen Nolan Bedford and Autumn Bedford's motion dismiss the libel claim pursuant to the Texas Citizens' Protection Act (TCPA).[1]

## II.  THE ALLEGED LIBEL

The first factual basis for the Dodgers' libel claim stems from an email sent by Mr. Bedford to Mr. Spassoff (the owner of the Dodgers) threatening to protest at the Dodgers' practice with homemade poster board signs that Bedford had made, photographed, and included in the email.  The second factual basis for the Dodgers' libel claim stems from a post on the Dallas Dodgers' Facebook page by

---

[1]I agree with the majority's conclusions that, applying the required de novo standard of review, the Bedfords—as movants seeking a dismissal under the TCPA—established that the Dodgers' claims against them were based on, related to, or in response to, the Bedfords' exercise of free speech; the burden therefore shifted to the Dodgers to establish by clear and specific evidence a prima facie case for each essential element of every claim asserted against the Bedfords; and, although the Dodgers pleaded claims against the Bedfords for libel, business disparagement, intentional infliction of emotional distress, and tortious interference with an existing contract or alternatively breach of contract, the Dodgers made no effort to meet their burden of establishing by clear and specific evidence a prima facie case on any claims except libel.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (West 2015).  Accordingly, I agree that, applying the required de novo standard of review, the trial court erred by denying the Bedfords' motion to dismiss these claims.

I further agree with the majority's conclusion that any error by the trial court in sustaining the Dodgers' objections to Mr. Bedford's affidavit was harmless.

Mr. Bedford using Mrs. Bedford's Facebook account and "rating" the Dodgers by giving them one star. Following the one-star rating, the post states, in toto:

> Be very careful. One of the coaches put my son on the team an [sic] then started calling and texting my wife. This coach is a home wrecker and the club stands behind him. I guess that's the kind of lessons they plan on teaching the kids. Very unethical and from talking to the executives they don't plan on changing. Please stay away[.]

### III. NO PUBLICATION OF THE EMAIL

Concerning Mr. Bedford's email to Mr. Spassoff, the email (with photos of his handmade poster board signs attached) as a matter of law cannot form the basis of the Dodgers' libel claim because the email was not published to a third party. *See, e.g.*, *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding) (setting forth elements of libel with first element being "the publication of a false statement of fact to a third party"); *Lyle v. Waddle*, 144 Tex. 90, 92–93 188 S.W.2d 770, 771–72 (1945) (holding that publication is an essential element of a libel action and that without publication, there is no libel); Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011) (defining libel as a writing injuring reputation; a person's reputation is not injured by a publication solely to that person, hence the requirement of publication to a "third party"). No evidence exists in the record (nor even any allegation) that Mr. Bedford's email to Mr. Spassoff was sent to anyone except Mr. Spassoff. Consequently, the

3

Dodgers failed to meet their burden of establishing by clear and specific evidence a prima facie case for the essential element of publication in their libel claim.[2]

### IV. THE POST IS NOT DEFAMATORY, AND THE DODGERS FAILED TO ESTABLISH DAMAGES

Concerning the post Mr. Bedford made to the Dallas Dodgers' Facebook page, the Dodgers failed to establish by clear and specific evidence a prima facie case for the required elements that (1) a statement in the post was defamatory[3] and (2) they suffered damages. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (defining libel as a defamatory statement made in writing); *Lipsky*, 460 S.W.3d at 593 (recognizing that damages constitute an essential element of a libel claim).

### A. No Defamatory Statement Concerning Spassoff or the Dodgers

Whether a false statement is capable of a defamatory meaning is initially a question of law for the court. *Hancock v. Variyam*, 400 S.W.3d 59, 67 (Tex. 2013); *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). Whether a publication is false and defamatory depends upon a reasonable person's perception of the entire publication. *Turner v. KTRK Television, Inc.*, 38

---

[2]Although the majority sets forth publication to a third party as a required element of libel, its analysis wholly omits any mention of what purported clear and specific evidence exists on this required element.

[3]Neither the majority nor the Dodgers identify a specific allegedly defamatory sentence or statement within the post; instead, they glommed the entire post together and call it generally defamatory. Consequently, I address each of the statements in the post to show that none are defamatory.

S.W.3d 103, 115 (Tex. 2000). We construe an alleged defamatory statement "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004). A statement may be false, abusive, unpleasant, or objectionable without being defamatory in light of the surrounding circumstances. *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.). Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013); *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989) ("[A]ll assertions of opinion are protected by the [F]irst [A]mendment . . . ."). We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made. *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002).

Looking to the circumstances surrounding Mr. Bedford's allegedly defamatory statements in his post and how a person of ordinary intelligence would perceive them, I note that the statements were made in a post on the Dodgers' Facebook page after Mr. Bedford gave the Dodgers a one-star rating. A consumer's rating of a business and comments supporting the rating are designed to be an expression of that one consumer's experience with and

5

opinion of the business.[4]  A person of ordinary intelligence perceives the ratings

and reviews made by consumers on a business's Facebook page as reflecting

the opinion of that consumer.  In the post, Mr. Bedford ascribed his opinion as to

why a coach put his son on the team—as pretext to start calling and texting his

wife.  Why a player is placed on a team is not an objectively-verifiable fact.   To

the extent the statement says the coach called and texted Mrs. Bedford, this fact

is true.[5]  True statements cannot form the basis of a defamation complaint.  *See*

*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).  Mr.

Bedford also expressed his opinion that "this coach" (not Mr. Spassoff or the

Dallas Dodgers Baseball Club) is a "home wrecker" and his opinion that "the club

stands behind him."  Whether a person is a home wrecker is not an objectively-

verifiable fact.  *See, e.g.*, *McConnell v. Coventry Health Care Nat'l Network*, No.

05-13-01365-CV, 2015 WL 4572431, at *10 (Tex. App.—Dallas July 30, 2015,

pet. denied) (mem. op.) (holding statement that doctor's comments were

"unprofessional" was an opinion and not an objectively verifiable fact); *Ruder v.*

*Jordan*, No. 05-14-01265-CV, 2015 WL 4397636, at *5 (Tex. App.—Dallas July

20, 2015, no pet.) (mem. op.) (holding seller's post on Zillow giving relator low

---

[4]*See*  https://www.facebook.com/help/434605260012677/  (explaining that ratings and reviews must focus on the product or service offered by the Page and be based on personal experience) (last visited February 5, 2016).

[5]In their brief, the Dodgers explain that the day after Mr. Bedford's post, "the coach" mentioned in the post "admitted to working privately with the Bedfords' son and 'hooking up' with Mrs. Bedford, but was adamant that the relationship 'had nothing to do with baseball.'"

6

rating and stating that seller had been asked if relator's conduct was attributable to "incompetence, unstable mind, or rage induced by re[j]ection" was not objectively verifiable and was a nonactionable expression of opinion). And whether a business will "stand behind" a worker is not an objectively-verifiable fact.[6] Mr. Bedford articulated his opinion that "I guess that's the kind of lessons they plan on teaching the kids." This is likewise not an objectively-verifiable fact but constitutes only Mr. Bedford's speculation. Mr. Bedford stated his opinion that the conduct was "unethical" and that "they don't plan on changing." A business's "ethics" in dealing with an independent contractor's noncriminal conduct not related to job performance is not an objectively-verifiable fact. *Compare Double Diamond, Inc.*, 109 S.W.3d at 855 (holding statement of opinionated criticism not actionable), *with Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at *2, *8 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.) (holding statements—that wild colony of bats outside the building had mites and included rabid bats, that owner of facility did not properly quarantine sick bats, did not notice when a bat fell in a trash can and neglected her own dogs—were objective verifiable statements of fact). Simply put, as a matter of law, viewing the entire posting as a whole in the context it was made—as a post on the Dodgers' Facebook page after giving the business a one-star rating, a person of ordinary intelligence would view every statement by

---

[6]In their brief, the Dodgers state that "the coach" was a batting coach who was an independent contractor with the organization.

7

Mr. Bedford as an expression of his own opinion. *See, e.g., Avila v. Larrea*, 394 S.W.3d 646, 659 (Tex. App—Dallas 2012, pet. denied) (explaining that a statement is opinion if it is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder"). The gist of Mr. Bedford's post is his complaint that his wife decided to become romantically involved with a batting coach for the Dodgers and his dissatisfaction with the Dodgers' handling of the situation; Mr. Bedford's post, at most, is opinionated criticism. *See, e.g., Double Diamond, Inc.*, 109 S.W.3d at 855; *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875–76 (Tex. App.—Dallas 2014, no pet.) (holding none of the posts by defendant on "various internet websites"—that "[t]he guy that was supposed to handle closing could barely speak english [sic]'" and that "Chris end [sic] everyone I talked to at this company were incompetent. They reviewd [sic] my credit rating and promised a quick close. Then the list of things got longer and longer"—were as a matter of law nondefamatory statements of opinion).

## B.  Even if Post Is Defamatory, It Is Not Defamatory Per Se, and No Damages Were Established

A plaintiff asserting a defamation claim "must plead and prove damages, unless the defamatory statements are defamatory per se." *Lipsky*, 460 S.W.3d at 592. The Dodgers failed to meet their burden of establishing by clear and specific evidence a prima facie case for the essential element of damages from Mr. Bedford's post. The parties' briefing as well as questions during oral argument established that the Dodgers successfully removed Mr. Bedford's

8

comments from the Dodgers' Facebook page within a few weeks. The prayer for relief in the Dodgers' original petition pleads for "actual damages," but neither the Dodgers' petition, nor the Dodgers' response to the Bedfords' motion to dismiss, nor Mr. Spassoff's affidavit attached to the Dodgers' response to the Bedfords' motion to dismiss, identify any "actual damages" suffered by either Mr. Spassoff or by the Dallas Dodgers Baseball Club as a result of Mr. Bedford's comments that were posted for approximately two weeks.[7] The Dodgers did not plead or prove that any individual actually read Mr. Bedford's post before it was removed. The Dodgers did not plead or prove that the Dodgers received any calls or expressions of concerns regarding the post. The Dodgers did not plead or prove that they lost any clients or ballplayers as a result of the post. In short, the

---

[7]Mr. Spassoff's affidavit contains one sentence stating that "[t]his conflict with the Bedfords has caused me countless hours of duress." This sentence is insufficient to satisfy the TCPA's clear-and-specific evidence requirement because (1) it bases Mr. Spassoff's duress on "the conflict with the Bedfords" not on damage to his reputation, and (2) such conclusory statements do not rise to clear and specific evidence. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (implying all recoverable damages for libel must stem from written defamatory statement); *Lipsky*, 460 S.W.3d at 592–93 (holding "general averments of direct economic losses and lost profits" do not satisfy the TCPA's clear-and-specific evidence standard without "specific facts illustrating how Lipsky's alleged remarks about Range's activities actually caused such losses"). To the extent the Dodgers attached evidence to their brief that is not included in the record before this court, I do not consider it. *See* Tex. R. App. P. 34.1 (describing the official appellate record as the clerk's record and reporter's record); *Guajardo v. Conwell,* 46 S.W.3d 862, 864 (Tex. 2001) (stating supreme court would not consider a document that was not in the clerk's record); *In re Guardianship of Winn,* 372 S.W.3d 291, 297 (Tex. App.—Dallas 2012, no pet.) (refusing to consider documents not contained in appellate record).

9

Dodgers did not plead or establish by clear-and-specific evidence a prima facie case for the essential element of damages in their libel claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Thus, the trial court was required to dismiss the Dodgers' libel claim unless Mr. Bedford's post was defamatory per se so that general damages were presumed. *See Hancock*, 400 S.W.3d at 68 (reversing defamation judgment for plaintiff because statements were not defamatory per se and because no evidence of damages existed to support award for defamation per quod).

A statement may be defamatory per se if is false and injures a person in his office, profession, or occupation; charges a person with the commission of a crime; imputes sexual misconduct; or accuses one of having a loathsome disease. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pets. denied). Mr. Bedford's post did not impute sexual misconduct to either plaintiff (Mr. Spassoff or the Dallas Dodgers Baseball Club), did not charge either plaintiff with the commission of a crime, and did not accuse either of having a loathsome disease. Thus, the only remaining question is whether the post injured Mr. Spassoff or the Dallas Dodgers Baseball Club in their occupation or profession.

The Texas Supreme Court has held that disparagement of a general character is not enough to constitute defamation per se "unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." *Hancock*, 400 S.W.3d at 67 (holding

10

statements—that doctor lacked veracity and dealt in half-truths—were not, in the context the statements were made, defamatory per se). The proper inquiry is whether a defamatory statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession. *Id.* When a statement is defamatory per se, then the factfinder may presume that the statement injured the plaintiff's reputation, and this presumption will support an award of general damages. *Bentley*, 94 S.W.3d at 604; *see also Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that relators' statements—that former employee, who had worked as an assistant to the relators, had stolen from them and their clients—was defamatory per se).

Here, no statement in Mr. Bedford's post accuses Mr. Spassoff or the Dallas Dodgers Baseball Club of lacking a peculiar or unique skill related to baseball or to running a baseball organization. Even the Dodgers' brief states that the independent-contractor coach's conduct in "hooking up" with Mrs. Bedford had nothing to do with baseball. The Dodgers provide no argument or analysis explaining how Mr. Bedford's post falls within the category of defamation per se.[8] A statement disparaging the Dodgers for not preventing a batting coach from engaging in an extramarital affair or for not disciplining such a coach in

---

[8]The majority nonetheless categorizes Mr. Bedford's post as statements of fact constituting defamation per se and presumes Mr. Spassoff and the Dallas Dodgers Baseball Club suffered "mental anguish and loss of reputation" damages from the post.

11

some unidentified manner, as apparently desired by Mr. Bedford, is not the disparagement of a character or quality that is essential to the business of operating a baseball club. At most, it is a general disparagement. *See Hancock*, 400 S.W.3d at 68 (recognizing that "[i]f an accusation of untruthfulness is defamatory per se for a physician in her profession, it would likewise be defamatory per se for other trades, businesses, and professions that rely on human interaction"). An accusation on a business's Facebook page as a "ratings and reviews" comment that the business did not prevent an employee's extramarital affair with a client and did not properly discipline the employee or handle the situation is defamatory per se only if it would likewise be defamatory per se for all other trades, businesses, and professions that rely on human interaction. I cannot agree with the majority that Mr. Bedford's post, even if defamatory, was so egregious and obviously injurious to the reputation of Mr. Spassoff and of the Dallas Dodgers Baseball Club that damages to Mr. Spassoff's reputation or to the Dallas Dodgers Baseball Club can be presumed as a matter of law by the approximately two-week-long post.

Accordingly, I would sustain the Bedfords' third point in toto.[9]

---

[9]Based on my disposition of the Bedfords' third point, it would be unnecessary to address their fourth and fifth points. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary for disposition of appeal).

12

## V. CONCLUSION

For the above reasons, I would hold that the trial court erred by failing to dismiss all of the Dodgers' claims against the Bedfords, including the libel claim, and I would remand the case to the trial court for further proceedings in accordance with the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(b), (d), .006, .007, .009 (West 2015). Because the majority holds otherwise, I respectfully dissent.


/s/ Sue Walker
SUE WALKER
JUSTICE

DELIVERED: February 11, 2016

13