cadenhead 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-570-CV





CURTIS H. CADENHEAD, JR.,



 APPELLANT


vs.





ANNE E. ROBERTSON,



 APPELLEE



 




FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT



NO. 90-0804, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING



 




 This is an appeal from an action for enforcement of a final order of property
division issued by a Georgia court incident to a divorce. The parties dispute the interpretation of
certain provisions of the order and their application to the division of assets. The district court
construed the provisions in favor of appellee and awarded actual damages, prejudgment interest,
and attorney's fees for appellant's failure to comply with the provisions of the final order. We
will modify the judgment in part and affirm as modified.



BACKGROUND


 Appellant, Curtis H. Cadenhead, Jr., and appellee, Anne E. Robertson (formerly
Anne E. Cadenhead), were divorced in Georgia in 1977, and their real and personal property was
divided pursuant to a final order dated April 15, 1980. At the time, Cadenhead was a partner in
the accounting firm of Deloitte & Touche (1) (the "Firm"). The final order awarded Robertson one-fourth of Cadenhead's capital interest in the Firm, to be valued on the earliest date entitling
Cadenhead to distribution of the interest under the terms of the Firm's Partnership Memorandum
of Agreement. (2) The final order did not mention Cadenhead's retirement benefits with the Firm.

 Cadenhead retired on May 31, 1986, which entitled him and Robertson to a final
distribution of their capital interest in the Firm. Cadenhead unilaterally elected to receive this
final distribution in five annual installments instead of a lump-sum payment; this allowed interest
to be earned on the undistributed principal. As Cadenhead received each installment, he remitted
to Robertson one-quarter of the principal of that installment; he did not, however, remit to her any
portion of the total $87,832 in interest that accrued on the principal as a result of his election.

 The final order allowed Cadenhead to deduct from the gross value of the final
distribution any indebtedness incurred for the purchase of the capital units before computing
Robertson's one-fourth share. The parties dispute whether the debts claimed by Cadenhead were
related to the purchase of the capital units and therefore properly deducted. The final order also
permitted Cadenhead to withhold taxes before remitting Robertson's share of the capital. 
However, rather than withholding taxes based on his anticipated actual tax liability, Cadenhead
withheld the hypothetical taxes he would have paid without any deductions or losses. 
Cadenhead's actual tax liability was significantly less than the amount he used to calculate
withholdings from Robertson's remittances.

 In addition to the final distribution of the remaining capital units with the Firm,
Cadenhead received in March 1986 a distribution of $186,006 upon termination of the Firm's
Partnership Pension Plan (the "Plan"). (3) Fortuitously, the March 1986 distribution of Plan assets
coincided roughly with Cadenhead's retirement but was not triggered by it; other partners received
distributions when the Plan was terminated. The parties dispute whether the Plan represents a
retirement benefit not divided by the final order, or whether it represents additional capital
interest, one-fourth of which belongs to Robertson. Robertson asked the trial court to partition
the Plan assets as retirement benefits not divided at the time of divorce; in the alternative, she
alleged that the distribution of Plan assets constituted a de facto portion of Cadenhead's capital
interest in the Firm. The trial court held that it had no jurisdiction to award Robertson retirement
benefits not divided by the Georgia court, but then determined that the March 1986 distribution
of the Plan assets constituted a distribution of capital interest in the Firm and awarded Robertson
her one-fourth share under the final order. 

 In her enforcement action Robertson also requested and was awarded: (1) one-fourth of the interest Cadenhead earned as a result of his electing to receive their final distribution
in five installments; (2) taxes Cadenhead withheld in excess of his actual tax liability; (3)
prejudgment interest; and (4) attorney's fees. The trial court did not award Robertson any portion
of the $68,188 Cadenhead subtracted from the final distribution for purchase-money debt and
denied her claim for exemplary damages for Cadenhead's alleged breach of fiduciary duties.

 Cadenhead asserts three points of error in his appeal. He claims the trial court
erred in: (1) awarding Robertson one-quarter of the interest he received by electing to receive the
final distribution in installments; (2) allowing Robertson to share in tax benefits he received
through investment of his separate property; and (3) concluding that the March 1986 distribution
of Plan assets was a distribution of his capital interest in the Firm. Robertson alleges in her cross-points of error that the trial court: (1) misplaced the burden of proof on Robertson with regard
to the debt Cadenhead deducted for the purchase of his capital interest and erred in failing to
award her a one-fourth share of these improper deductions; (2) erred in failing to award
exemplary damages for Cadenhead's breach of his fiduciary duties to her; and (3) abused its
discretion in awarding Robertson only $5,000 attorney's fees and costs. Robertson also brings
a fourth cross-point that is contingent on our granting Cadenhead's third point of error. Because
we will overrule Cadenhead's third point of error, we need not address the conditional cross-point.



DISCUSSION


Choice of Law

 Before proceeding to the merits of the appeal, we will address a choice-of-law
question raised by the parties. Cadenhead did not raise a point of error regarding choice of law,
but argues that Georgia law controls construction of the final order because both parties cited and
discussed Georgia law in their pleadings and supporting memoranda in the trial court. In
response, Robertson contends that Texas law controls because neither party asked the trial court
to take judicial notice of Georgia law. We will follow Texas law in resolving the parties' dispute. 
First, as Robertson correctly notes, Cadenhead did not request judicial notice of the laws of
Georgia in this cause. See Tex. R. Civ. Evid. 202. Second, there is no indication from the trial
court's orders, judgments, findings of fact, or conclusions of law that it looked to Georgia law. 
Cf. Keene Corp. v. Rogers, 863 S.W.2d 168, 174 (Tex. App.--Texarkana 1993, no writ) (court
of appeals considered Alabama law because record showed attorneys agreed that Alabama law
controlled and court announced at a hearing that it would follow Alabama law). Finally,
Cadenhead himself cites primarily Texas law. Because we find nothing that indicates which law
the trial court applied, we presume that Texas law applies or that the law of Georgia is the same
as that of Texas. See Ogletree v.Crates, 363 S.W.2d 431, 435 (Tex. 1963).



Interest 

 In his first point of error, Cadenhead contends that the district court erred in
awarding Robertson one-fourth of the interest he received as a result of his election to receive the
final distribution of their capital interest in five annual installments. Cadenhead argues that the
final order contemplates valuation and distribution of the capital interest at different times and
provides for proration of Robertson's one-fourth share of only the principal over the same number
of payments. We are unpersuaded by Cadenhead's argument. (4)

 The final order clearly states that Robertson's one-fourth share is to be calculated
"as of the date of occurrence of the first event which entitles [Cadenhead] to the distribution of
his capital interest according to the terms of the partnership agreement." Cadenhead elected to
receive his Final Distribution in five equal installments; this arrangement was not mandated by
the terms of the partnership's Memorandum of Agreement. Absent any evidence or argument to
the contrary, we assume Cadenhead's election was voluntary and that he could have received the
distribution in a lump sum if he so desired. Consequently, Robertson was entitled to her entire
one-fourth share of the final distribution of the capital interest on the date Cadenhead received the
first installment.

 Although the final order is silent regarding the division of interest, Cadenhead's
election to delay disbursement of the final distribution entitled Robertson to her pro rata share of
the interest. Law and equity demand compensation for money held and used, even if possession
and utilization of the funds was reasonable or necessary. Phillips Petroleum Co. v. Stahl
Petroleum Co., 569 S.W.2d 480, 485 (Tex. 1978). Cadenhead chose to receive the final
distribution in installments, earning approximately twenty-five percent on the principal as a result. 
His detention of Robertson's share of the principal benefitted him. Moreover, the partnership
Memorandum of Agreement provides specifically for payment of interest on the unpaid balance
of a partner's capital holdings retained by the Firm after retirement. Law, equity, and common
sense all dictate that Cadenhead not be allowed to reap this financial windfall without paying
anything for it. Appellant's first point of error is overruled.



Taxes

 In his second point of error, Cadenhead argues that the trial court erred in applying
his effective tax rate for each year he received a final distribution installment to determine the
taxes he was "required to pay as a result of the distribution" under the final order. Cadenhead
calculated his hypothetical taxes -- ignoring all deductions and losses -- for the five-year period to
be $118,212 and accordingly withheld $29,553 for Robertson's one-fourth share of this liability. 
Cadenhead's actual tax liability for the period totalled $25,715, one-fourth of which is $6,429. 
The trial court awarded Robertson the excess withheld, $23,124 ($29,553 - $6,429), as a portion
of her actual damages. Cadenhead contends that applying his effective tax rate improperly gives
Robertson the advantage of allowances and deductions he took on his federal tax returns as the
result of prudent investments made with his separate property.

 This dispute can be avoided when a divorce decree provides for pre-tax distribution
to the parties, requiring each to pay tax at his or her individual rate. (5) Unfortunately, the Georgia
court's order did not so provide. Rather, the order instructs Cadenhead to deduct from
Robertson's remittances the taxes "[he] is required to pay as a result of the distribution"; it does
not instruct him to consider Robertson's tax rate or to calculate hypothetical taxes he would have
to pay "but for" his other investments or financial dealings. Cadenhead cites no authority for the
proposition that the phrase "taxes which [he] is required to pay" could refer to anything other than
his actual tax liability.

 Under the language of this order, Robertson's share of the capital interest could be
diminished or augmented by Cadenhead's tax planning and business acumen. Cadenhead's
financial savvy no doubt benefitted Robertson; however, she also ran the risk of a diminished
share had he invested poorly or incurred large capital gains in the years of distribution. We
overrule appellant's second point of error.



The Partnership Plan Distribution

 In his third point of error, Cadenhead contends that the trial court erred in finding
that the March 1986 distribution of the Firm's Partnership Pension Plan was a capital distribution
and in awarding one-fourth of this distribution to Robertson. Cadenhead claims that the Plan's
denomination as a pension plan, coupled with the fact that contributions to the Plan would have
been income to him if distributed, conclusively establish that the Plan's assets are retirement
benefits belonging solely to him. We disagree.

 Cadenhead concedes in his brief that whether the funds in the Plan constitute a part
of his capital interest in the partnership is a "mixed question of fact and law." We attach to the
trial court's findings of fact the same weight that we attach to a jury's verdict upon jury questions. 
City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ. App.--Houston [14th Dist.]
1977, writ ref'd n.r.e.). Findings of fact are reviewable for legal and factual sufficiency of the
evidence by the same standards used to review jury findings. Okon v. Levy, 612 S.W.2d 938, 941
(Tex. App.--Dallas 1981, writ ref'd n.r.e.) (citing Hall v. Villareal Dev. Corp., 522 S.W.2d 195
(Tex. 1975)).

 Cadenhead did not specify whether he was challenging the trial court's finding on
the basis of legal or factual sufficiency of the evidence. However, his argument under this point
suggests that he believes the trial court erred as a matter of law. Furthermore, at oral argument
Cadenhead stated that he was challenging the legal sufficiency of the evidence, i.e., there was no
evidence to support the trial court's finding. We consequently assume that the evidence is
challenged for legal sufficiency. An appellant who challenges the legal sufficiency of the evidence
supporting an issue upon which it did not have the burden of proof must demonstrate that there
is no evidence to support the adverse finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration
Co., 766 S.W.2d 264, 275 (Tex. App.--Amarillo 1988, writ denied). In reviewing a no-evidence
point, we consider only the evidence supporting the finding and disregard all evidence to the
contrary. Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). If there is any
evidence supporting the finding, we must overrule the point and uphold the finding.

 The record is replete with evidence supporting the trial court's finding that the
March 1986 distribution of the Plan was in fact a distribution of Cadenhead and Robertson's
capital interest. First, the Firm's own memoranda regarding the distribution of the Plan
demonstrate that the distribution to partners was tied to three factors, each of which was based
on the number of capital units held: (1) $71.12 per capital unit for goodwill; (2) an amount for
the capital loss per unit as a result of the change in the capital structure of the Firm; and (3) an
amount for plan contributions made by the Firm, based on each partner's capital unit holdings for
each year of contribution. Furthermore, Frank Scofield, Robertson's expert and the only expert
to testify in this case, testified that the Firm terminated the Plan contemporaneously with
"reorganization or retainment of the capital account" and that Cadenhead's capital interest was
reduced in value as part of the reorganization. Scofield pointed out that the Plan had "elements
of a capital account" and was "clearly a distribution of what would have otherwise been included
in the capital account." Scofield also testified that Cadenhead continued to receive retirement
benefits from the Firm after dissolution of the Plan.

 Because we find ample evidence to support the trial court's finding that the March
1986 distribution of the Plan was in fact a distribution of Cadenhead's capital interest, we overrule
appellant's third point of error.


Appellee's Cross-Points

 In her third cross-point, Robertson asserts that the trial court's award of $5,000
attorney's fees was so inadequate as to constitute an abuse of discretion. The Texas Family Code
provides that a trial court may award attorney's fees and costs incurred in enforcement of divorce
decrees. Tex. Fam. Code Ann. § 3.77 (West 1993). Accordingly, an award of these fees lies
firmly within the discretion of the trial court. We therefore review the award under an abuse of
discretion standard and will reverse a trial court's award only if it has acted in an unreasonable
or arbitrary manner. See Beaumont Bank N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).

 The trial court heard testimony from Robertson's attorney regarding the amount
of time he spent on the case and his fee arrangement with Robertson. However, the court was
also able to consider the documents filed by counsel, the conduct of counsel, the type of case, and
the equities of the award in making its determination. We cannot say that the trial court abused
its discretion in this case and therefore overrule appellee's third cross-point of error.

 Robertson asserts in her second cross-point that exemplary damages should have
been assessed against Cadenhead for breach of his fiduciary duty to her. Like attorney's fees, an
award of exemplary damages is largely within the discretion of the fact finder. See Chasewood
Constr. Co. v. Rico, 696 S.W.2d 439 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). Although
exemplary damages may be proper when a fiduciary has engaged in self-dealing, they are not
automatic; the finder of fact must evaluate the extent to which "punishment" of the fiduciary is
justified apart from and in addition to fair compensation of the beneficiary. See id. As Robertson
herself admits, she "spent little time focusing on the conduct of Mr. Cadenhead [at trial]." The
character of the conduct involved and the degree of culpability of the wrongdoer are two factors
that the supreme court has instructed us to consider in reviewing the propriety of an award of
exemplary damages. See Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981); see also
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994). In light of the paucity of
evidence on Cadenhead's conduct or motivation, we are unable to say that the trial court abused
its discretion in declining to award Robertson exemplary damages. Robertson's second cross-point of error is overruled.

 In her first cross-point, Robertson argues that the trial court erred in allowing
Cadenhead to deduct $68,188 of debt purportedly used to purchase the capital interest in the Firm
because he produced no evidence proving the validity of these deductions. The parties stipulated
that the gross value of the final distribution was $346,669. The trial court found that the
remainder, or net value, of the final distribution after allowing for indebtedness was $278,481. 
The trial court therefore allowed deductions of $68,188 ($346,669 - $278,481). Robertson argues
that Cadenhead was a fiduciary for her one-fourth share of their capital interest in the Firm and
that he therefore bore the burden of proving that the loans were attributable to his purchase of
capital units and that the funds had not been borrowed for some other purpose. Because we agree
that Cadenhead bore the burden of proof and failed to adduce any evidence with respect to the
validity of the indebtedness, we will sustain Robertson's cross-point.

 When a party is awarded the right to receive a portion of a future interest in
property pursuant to a divorce decree, the subsequent receipt by the non-owning party "creates
a fiduciary obligation in favor of the owner and imposes a constructive trust on the property for
the benefit of the owner." Tex. Fam. Code Ann. § 3.75 (West 1993). When a fiduciary
relationship exists, "equity indulges the presumption of unfairness and invalidity" and places the
burden on the fiduciary to establish the validity of any transaction in which he is involved. 
Stephens County Museum, Inc. v. Swenson, 517 S.W.2d 257, 260 (Tex. 1974); Chien v. Chen,
759 S.W.2d 484, 495 (Tex. App.--Austin 1988, no writ).

 Cadenhead responds that Robertson properly bore the burden of proof with regard
to invalidity of the debt. In support of this position he argues that he incurred the indebtedness
for purchasing the capital interest before he received the final distribution and, therefore, before
he had a fiduciary obligation to Robertson. Cadenhead's argument misses the mark because there
is no evidence in the record showing when or for what purpose he incurred the purported debt. 
The record merely demonstrates that Cadenhead deducted $68,188 before computing Robertson's
one-fourth share; it contains nothing to elucidate how Cadenhead discharged his fiduciary duties
to Robertson by deducting only qualified, purchase-money debts. Allowing Cadenhead to deduct
such a substantial amount before calculating Robertson's portion by claiming that she bore the
burden of proof -- even though Cadenhead possessed all documents regarding these transactions
-- subverts the purpose of the rule requiring fiduciaries to prove the validity of their transactions
that adversely affect a principal's interest. Cadenhead offered no testimony or documentation
relating to the debt he purportedly incurred, even though Robertson clearly notified him in her
pleadings and at trial that she contested the validity of the deductions. In light of the foregoing,
we sustain Robertson's first cross-point of error and render judgment in her favor for $17,047
plus prejudgment interest, representing one-fourth of the $68,188 of debt the trial court
improperly deducted from the final distribution.



CONCLUSION


 We modify the trial court's judgment to reflect the additional award to Robertson
of $17,047 plus prejudgment interest for her portion of debts improperly deducted from
Cadenhead's final distribution and affirm the judgment as modified.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie, and B. A. Smith

Modified and, as Modified, Affirmed

Filed: October 26, 1994

Do Not Publish

1.   All pertinent documents refer to the partnership by its former name, Deloitte
Haskins & Sells.
2.   Paragraph 7 of the Final Order contains the relevant and disputed provisions, which
read:


The Court hereby awards to [Robertson] as a further and final division of the
marital property of the parties one-fourth of [Cadenhead's] capital interest
now owned and hereafter acquired in the partnership of Deloitte Haskins &
Sells to be determined in accordance with the following terms and conditions. 
The value of this one-fourth interest to be paid to [Robertson] by [Cadenhead
or his] estate is to be determined as of date of occurrence of the first event
which entitles [Cadenhead or his] estate to the distribution of his capital
interest according to the terms of the partnership agreement of Deloitte
Haskins & Sells, and the amount to be paid to [Robertson] by [Cadenhead] or
his estate shall be one-fourth of the sum arrived at by deducting from the stated
value of [Cadenhead's] capital units any indebtedness, including principal and
interest, owed at the time of this evaluation by [Cadenhead or his] estate to
Deloitte Haskins & Sells or lending institution authorized by that Firm for the
purchase of his capital units and for advances for taxes directed by the Firm, and
by the further deduction from said stated value of all taxes which [Cadenhead or
his] estate is required to pay as a result of the distribution of said capital interest
to [Cadenhead or his] estate. In the event that the partnership Memorandum of
Agreement of Deloitte Haskins & Sells provides that [Cadenhead] shall receive
the distribution of the value of his capital units in more than one payment, then in
that event the amount to be paid to [Robertson] by [Cadenhead] pursuant to this
paragraph shall be prorated over the number of payments to be received by
[Cadenhead] and paid to [Robertson] by [Cadenhead or his] estate according to
such prorated schedule based upon said partnership Memorandum of Agreement.


The Memorandum of Agreement and its Annex, both dated June 2, 1985, were stipulated to by
the parties.
3.   Although the trial court refers to the distribution as "the May distribution" in its
findings of fact, the exhibits indicate that the distribution was actually made in March. 
Also, the actual distribution appears to have been $186,008; Robertson accepts the lower
figure of $186,006 for purposes of damages calculations and this appeal.
4.   In his original brief, appellant cited no authority to support his argument under any
of his three points of error. Argument and authority must support a point of error for such
error to be properly before the court on appeal. Green v. Reyes, 836 S.W.2d 203, 213 (Tex.
App.--Houston [14th Dist.] 1992, no writ). However, because we are able to discern the
substance of appellant's arguments, we will review his points of error "in the interest of
justice." See Tex. R. App. P. 74(p). Furthermore, appellant did file a supplemental brief
with authorities before submission.
5.   For example, in order to satisfy the requirements of a Qualified Domestic Relations
Order under the Employee Retirement and Income Security Act, the order must specify
the amount or percentage of benefits to be paid to the alternate payee. See 29 U.S.C.A. §
1056(d)(C)(ii) (West Supp. 1994). The transferred portion or percentage of benefits are taxed
as the spouse's property, not the plan participant's. See 26 U.S.C.A. § 408(d)(6) (West Supp.
1994).